UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDRE PARKER,<br><br>Defendant. | No. 2:20-cr-00033-TLN<br><br>**ORDER** |

This matter is before the Court on Defendant Andre Parker's ("Defendant") Motion to Revoke Detention Order and for Order of Release. (ECF No. 20.) The Government filed an opposition. (ECF No. 21.) Defendant filed a reply. (ECF No. 22.) For the reasons set forth below, the Court DENIES Defendant's motion.

///
///
///
///
///
///
///
///

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On December 29, 2019, Officers Hepler and Spring of the Sacramento Police Department stopped a vehicle because its registration was expired. Defendant, a passenger in the vehicle, informed Officer Hepler that he was on informal searchable probation. The officers ran a records search on Defendant and confirmed he was on searchable probation for several narcotics-related charges. The records search also showed Defendant had multiple firearms charges in the last decade.

The officers returned to the vehicle and asked Defendant if there was a firearm in the vehicle. Defendant told the officers there was a firearm under his seat. Officer Hepler then removed Defendant from the vehicle and detained him in handcuffs. Officer Spring checked under the front passenger seat and found a "grey/black sock" with a firearm inside. He removed the firearm from the sock and found a Springfield XD .45 caliber handgun, with one live .45 round in the chamber and several additional live rounds in the magazine. Officer Hepler obtained a Mirandized statement from Defendant, who admitted that the firearm in the vehicle was his. It was later determined that the firearm had been reported stolen in an armed robbery in West Point, California in 2017.

A subsequent records check revealed that Defendant had a lengthy criminal background, with many misdemeanor and felony convictions dating back to the mid-1980s, as well as several probation and supervised release violations. In his motion, Defendant asserts his "main struggles" have been drug abuse and mental health issues. (ECF No. 20 at 2.) Defendant also states he told one of the arresting officers that he "fell off the wagon" and had the firearm because he felt "a lot of people" were after him. (*Id.*)

The Government charged Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), first by complaint and later by indictment. Defendant made his initial appearance on January 31, 2020, before a magistrate judge. The magistrate judge ordered Defendant to be detained, concluding, among other things, that the "[w]eight of [the]

---

[1] Unless otherwise stated, the following facts are based on the allegations in the complaint. (ECF No. 1.)

evidence against the defendant is strong" and that Defendant should be detained based on his "[p]rior criminal history," his "[p]articipation in criminal activity while on probation, parole, or supervised release," and his "[h]istory of violence or use of weapons" and "alcohol or substance abuse." (ECF No. 6 at 2.) Defendant notes he waived a pretrial services interview and did not contest detention at this initial appearance. (ECF No. 20 at 3.) Defendant pleaded not guilty at his arraignment on February 14, 2020.

On April 23, 2020, Defendant moved for bail review before a different magistrate judge. (ECF No. 11.) Defendant argued that his health was at risk in the Sacramento County Jail due to the COVID-19 pandemic and that he should be released, either to the care of the Wellspace Residential Treatment facility in Sacramento ("Wellspace") or to the supervision of his friend, Ms. Lorna Schrader. The Government opposed Defendant's motion. (*See* ECF No. 12.) The magistrate judge held a hearing on April 28, 2020. At the hearing, the magistrate judge denied Defendant's motion based on the danger Defendant posed to the community. (*See* ECF No. 13; *see also* ECF No. 15 at 8:13–15.)

On May 1, 2020, Defendant filed the instant motion to revoke the magistrate judge's April 28, 2020 order pursuant to 18 U.S.C. § 3145(b). (ECF No. 20.) The Government filed an opposition on May 6, 2020. (ECF No. 21.) Defendant filed a reply on May 8, 2020. (ECF No. 22.) The Court took the matter under submission on May 15, 2020. (ECF No. 23.)

**II.   STANDARD OF LAW**

A person "ordered detained by a magistrate judge . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Under this provision, the district court conducts its own *de novo* review of the magistrate judge's detention order. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* at 1193. "[T]he district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate." *Id.*

///

3

### III. ANALYSIS

Defendant makes two main arguments for release. First, Defendant argues he has three medical conditions that make him particularly vulnerable to COVID-19: diabetes; hypertension; and a history of mental illness. (ECF No. 20 at 5.) According to Defendant, his vulnerability to COVID-19 is a compelling reason for release pursuant to 18 U.S.C. § 3142(i) ("§ 3142(i)"). (*Id.* at 8.) Second, Defendant argues: (1) the Government has not met its burden to show he should be detained; and (2) there are conditions of release that will reasonably assure his future appearance and the safety of the community. (*Id.* at 9–10.) More specifically, Defendant asks the Court to order him released to a 90-day residential drug treatment program at Wellspace and then to the third-party custody of his friend, Ms. Schrader. (*Id.* at 11.)

In opposition, the Government argues COVID-19 is not a compelling reason to justify Defendant's release under § 3142(i). (ECF No. 21 at 4.) The Government also argues each of the 18 U.S.C. § 3142(g) ("§ 3142(g)") factors support Defendant's detention based on the danger he poses to the community and his risk of flight. (*Id.* at 6–9.) The Court will address § 3142(i) and the § 3142(g) factors in turn.

#### A. § 3142(i)

Under § 3142(i), the Court "may . . . permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Defendant bears the burden of establishing temporary release is warranted under § 3142(i). *United States v. Phillips*, No. 2:19-CR-0081 KJM, 2020 WL 2084808, at *3 (E.D. Cal. Apr. 30, 2020).

Defendant argues the COVID-19 pandemic is a compelling reason for his release within the meaning of § 3142(i). (ECF No. 20 at 8; ECF No. 22 at 4.) To support his argument, Defendant cites *United States v. Stephens*, No. 15-CR-95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020), a recent COVID-19 release decision from the Southern District of New York. Yet Defendant ignores the fact that the "compelling reason" for release in *Stephens* was the defendant's inability to prepare a defense as opposed to general COVID-19 concerns. *See id.* at *3 (finding that the suspension of all prison visits until further notice necessitated temporary

release under § 3142(i) because it "impacts the Defendant's ability to prepare his defenses to the alleged violation of supervised release in advance of the merits [of his] hearing"). The *Stephens* court also emphasized that the defendant had demonstrated by clear and convincing evidence that he did not pose a danger to the community. *Id.* at *2.

Defendant also cites *United States v. Michaels*, No. SACR 16-76-JVS, 2020 WL 1482553 (C.D. Cal. Mar. 26, 2020). The *Michaels* court released the defendant under § 3142(i) because his age and medical conditions placed him in the "group most susceptible to COVID-19." *Id.* at *1. The *Michaels* decision does not contain a lengthy analysis. After closer review of the filings, however, it is clear *Michaels* is factually distinguishable to the case at hand.[2] *See id.*, ECF No. 1056 at 1–2. For example, the defendant in *Michael* was 78 years old and had a documented history of diagnosed respiratory disorders and breathing difficulties prior to the COVID-19 outbreak. *Id.* In addition, the *Michaels* defendant was not being detained due to his danger to the community — he was detained on the grounds of flight risk alone. *Id.*

Unlike the defendant in *Stephens*, Defendant does not argue he is unable to prepare a defense. Rather, Defendant's sole "compelling reason" for release under § 3142(i) is his vulnerability to COVID-19. Defendant's argument is unavailing. In *Michaels*, the defendant was 78 years old and suffered from well-documented and severe respiratory conditions. In contrast, Defendant is only 54 years old and claims he suffers from diabetes, hypertension, and a history of mental illness. While the Court is mindful that people with certain health conditions, including diabetes and hypertension, can be particularly vulnerable to COVID-19, Defendant fails to provide any evidence of his alleged medical conditions. As such, the Court has no way of knowing whether Defendant actually suffers from the alleged medical conditions or whether those conditions are serious enough to make him more vulnerable to COVID-19. The only exhibit Defendant provides is a document with charts showing COVID-19 infection rates for Bureau of Prisons inmates generally. (*See* ECF No. 20-1.) But Defendant's generalized concerns

---

[2] The Court may take judicial notice of publicly available records. *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("Courts routinely take judicial notice of publicly available records, including hearing transcripts, from other court proceedings.").

about COVID-19 are not sufficient grounds for release.  It also bears mentioning that as of the date of this Order, the Court is aware of only one case of COVID-19 reported at Sacramento County Jail.  Finally, it is important to emphasize that the defendants in *Stephens* and *Michaels* were not deemed a danger to the community.  As will be discussed in more detail below, there is clear and convincing evidence Defendant poses a danger to the community.

In sum, Defendant has not met his burden.  The Court lacks evidence that Defendant is particularly vulnerable to COVID-19 or that the conditions of his confinement are inadequate in light of the legitimate need to detain him based on the serious risk of danger he poses to the community.  Therefore, the Court declines to grant Defendant's request for temporary release under § 3142(i).

B.  Factors set forth in § 3142(g)

The Government may move for detention of persons charged with certain crimes, including "any felony . . . that involves the possession . . . of a firearm," but it bears the burden to show that detention is warranted.  18 U.S.C. § 3142(f).  When the Government seeks to detain someone as a danger (i.e., based on an allegation "that no condition or combination of conditions will reasonably assure the safety of any other person and the community") its claim must "be supported by clear and convincing evidence."  18 U.S.C. § 3142(f); *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing 18 U.S.C. § 3142(f)(2)(B)).

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court must consider the following factors: (1) the nature and circumstances of the offense charged, including whether it involves firearms; (2) the weight of the evidence against Defendant; (3) Defendant's history and characteristics, including his physical and mental condition, history relating to drug abuse, criminal history, and whether he was on probation at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community posed by Defendant's release. 18 U.S.C. § 3142(g).  Here, all of the § 3142(g) factors weigh against Defendant's release.

///

       *i.*  *Nature and Circumstances of the Offense Charged*

As to the nature and circumstances of the offense charged, the Court is concerned that Defendant was found with a loaded, concealed, stolen firearm. In addition, Defendant has admitted his mental health issues and continued drug use and told Pretrial Services he used methamphetamine on the day of his arrest. Further, the Government alleges that, during the arrest, Defendant indicated to the officers that he contemplated "suicide by cop." (ECF No. 21 at 2.) Defendant does not respond to this allegation in his reply. Instead, Defendant emphasizes that he "volunteered to police that he was on searchable probation, admitted that he had a firearm, and he later explained that he had no good reason for it and that he struggled with mental illness and drug use." (ECF No. 22 at 2.) Despite Defendant's cooperation with the officers during this incident, Defendant's mental illness and drug abuse problems only increase the Court's concerns about the danger posed by his possession of a loaded firearm. Therefore, this factor weighs against release.

       *ii.*  *Weight of the Evidence Against Defendant*

The evidence against Defendant appears to be considerable. The Government supports its felon in possession of a firearm charge against Defendant by citing Defendant's criminal records, the arresting officers' reports, and Defendant's own statements after being given *Miranda* warnings. Notably, Defendant does not contest any of this evidence in his reply. Although this factor carries the least force in the Court's analysis due to the presumption of innocence, it does weigh against release. *See Bell v. Wolfish*, 441 U.S. 520, 533 (1979); *see also United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

       *iii.*  *Defendant's History and Characteristics*

The Pretrial Services report describes Defendant's history as follows: Defendant has incurred approximately 40 arrests or contacts with law enforcement; his criminal record is replete with arrests and convictions for offenses including drug related offenses (possession, use, sales and transport), driving offenses, weapons offenses, violence and battery related offenses, and multiple firearms-related offenses; he has a significant substance abuse history; he has diagnosed mental health issues; according to his criminal record he is a validated gang member; he appears

7

to be on probation in Sacramento County until 2022; he was on probation at the time of the instant offense; and he has participated in four or five previous substance abuse programs.

It is undisputed that Defendant has a lengthy criminal history. However, Defendant argues most of his criminal history is non-violent and emphasizes that the only violence recorded is a 1988 conviction for assault with a deadly weapon. (ECF No. 20 at 2.) Looking at Defendant's history and characteristics as a whole, the Court concludes that Defendant's assault with a deadly weapon conviction, many offenses involving firearms, ongoing substance abuse problems, and untreated mental health issues show a disregard for the safety of the community and himself. For these reasons, this factor weighs against release.

*iv.     Nature and Seriousness of the Danger*

Regarding the nature and seriousness of the danger to the community, the Court reiterates that a person with untreated mental illness, substance abuse problems, a history of illegally possessing firearms, and at least one conviction for assault with a deadly weapon poses a serious risk of danger to the community. Moreover, Defendant's ongoing drug use in and of itself poses a danger to the community. *See United States v. Gebro*, 948 F.2d 1118, 1121–22 (9th Cir. 1991) (finding clear and convincing evidence the defendant was a danger to the community even though his "prior criminal record consist[ed] primarily of drug-related offenses").

Despite Defendant's overarching concerns about COVID-19, Defendant fails to explain how the COVID-19 pandemic mitigates his dangerousness. To the contrary, the Court is concerned that Defendant may pose even more danger in the midst of the current pandemic as law enforcement officers take extra precautions to protect themselves and resources are strained. Further, Defendant's continuous pattern of criminal violations shows he cannot be trusted to follow the law. As such, "the Court sees no reason that Defendant would choose to adhere to the essentially voluntary mandates currently governing our collective society, and releasing him now would thus pose even more of a danger to the public than it would absent the pandemic." *United States v. McCurin*, No. 2:06-CR-00255-MCE, 2020 WL 1700030, at *2 (E.D. Cal. Apr. 8, 2020). Accordingly, this factor weighs against release.

///

      *v.*  *Defendant's Requested Conditions of Release*

Defendant requests release to Wellspace and then to third-party custody. According to Defendant, Wellspace places certain restrictions on its residents. However, it is unlikely the rules of the Wellspace program would adequately mitigate the danger Defendant poses to the community. Indeed, the record before the Court shows Defendant has not been successful in treatment programs so far, and his many criminal violations demonstrate that he has not been willing to follow rules for decades. As for his request to live with his friend, Ms. Schrader, Defendant admits he relapsed prior to his arrest for the instant offense despite receiving assistance from Ms. Schrader. It is unclear how her influence would lead to a different result now. While the Court understands the difficulties of treating substance abuse and mental illness, the Court finds there are no conditions that will adequately mitigate the danger Defendant poses to the community at this time.

In sum, the Court finds there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community as required by § 3142(f).[3]

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's Motion to Revoke Detention Order and for Order of Release. (ECF No. 20.)

IT IS SO ORDERED.

DATED: May 26, 2020

                Troy L. Nunley
                United States District Judge

---

[3] Having found there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, the Court need not and does not address Defendant's risk of flight in this Order. *See Hir,* 517 F.3d at 1089.